UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FREIGHTLINER CUSTOM CHASSIS
CORPORATION,

                                   Plaintiff,

                              v.                                                        8:20-CV-1390
                                                                                      (FJS/CFH)
LANDSTAR RANGER INC.; ROSE'S MOBILE1
ENTERPRISES LTD.; and AARON GILLIS,

                                   Defendants.
_____

**APPEARANCES**                                                         **OF COUNSEL**

**WEBSTER SZANYI LLP**                            KEVIN A. SZANYI, ESQ.
1400 Liberty Building                               STEVEN R. HAMLIN, ESQ.
Buffalo New York 14202                         THOMAS S. LANE, ESQ.
Attorneys for Plaintiff

**BENNETT SCHECHTER**                           PETER D. CANTONE, ESQ.
**ARCURI & WILL LLP**
701 Seneca Street
Suite 609
Buffalo, New York 14210
Attorneys for Defendant
Landstar Range, Inc.

**BLANK ROME LLP**                                         WILLIAM R. BENNETT, III, ESQ.
1271 Avenue of the Americas
New York, New York 10020
Attorneys for Defendant
Rose's Mobile1 Enterprises, Ltd.

**AARON GILLIS**                                                   NO APPEARANCE
Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. BACKGROUND

Plaintiff, a Delaware corporation with its principal place of business in South Carolina, manufactures custom chassis for vehicles at its South Carolina facility. *See* Dkt. No. 23, Amended Compl., at ¶¶ 1, 8. Plaintiff contracted with non-party Brinks Security to manufacture five custom chassis for armored vehicles and to ship those chassis from South Carolina to Brinks's location in Canada. *See id.* at ¶ 9. To transport the chassis to Canada, Plaintiff used Defendant Landstar Ranger Inc.'s ("Landstar") services. *See id.* at ¶¶ 10-12; Dkt. No. 23-1, Ex. A, Bill of Lading, at 2. Defendant Landstar, a Florida corporation with its principal place of business in that state, is a "provider of transportation services," including shipment between the United States and Canada. *See* Dkt. No. 23 at ¶¶ 2, 10. Defendant Landstar allegedly arranged for Defendant Rose's Mobile1 Enterprises Ltd. ("Rose's"), a freight carrier and Canadian corporation with its principal place of business in Stephenville, Newfoundland, Canada, to ship the custom chassis to Canada. *See id.* at ¶¶ 3, 12. Defendant Rose's employed Defendant Aaron Gillis, a Canadian citizen, to drive the truck transporting the custom chassis to Canada. *See id.* at ¶¶ 4, 14.

Plaintiff alleges that, on March 16, 2018, Defendant Gillis was involved in an accident while driving through the Town of Lewis, New York, which resulted in substantial damages to each of the five custom chassis he was transporting. *See id.* at ¶ 16. The New York State Police prepared a report that allegedly indicated that Defendant Gillis was "operating a [commercial motor vehicle] while fatigued" and in violation "of hours of service rules," among other things, and the police issued him a ticket for moving from a lane unsafely. *See id.* at ¶¶ 17-18. Plaintiff alleges that the damaged chassis were returned to South Carolina where they

"await disposal or sale for scrap because they were deemed a total loss because of the damage, including internal damage[.]" *See id.* at ¶ 19. Plaintiff asserts that it cost it $153,687.50 to replace the custom chassis, and Plaintiff also incurred damage to its reputation and goodwill as a result of the end customer's delayed receipt of the chassis. *See id.* at ¶¶ 22-23. Plaintiff claims that it tendered the loss to Defendants and their insurance carriers but has not received any response, and each Defendant has refused Plaintiff's demands for full payment. *See id.* at ¶¶ 21, 24.

Based on these allegations, Plaintiff asserts a cause of action for breach of contract against Defendants Landstar and Rose's, a cause of action for negligence and gross negligence against all Defendants pursuant to the Carmack Amendment to the Interstate Commerce Act, 42 U.S.C. § 14706 ("Carmack Amendment"), and a cause of action for bailment against Defendants Rose's and Gillis. *See id.* at ¶¶ 25-45.[1] Pending before the Court is Defendant Landstar's motion to dismiss Plaintiff's complaint against it for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and pursuant to the doctrine of federal preemption. *See* Dkt. No. 17.[2]

---

[1] Although Plaintiff relies on diversity of citizenship as a basis for subject matter jurisdiction, the Court notes that it also has federal question jurisdiction over this matter because one of Plaintiff's claims is based on a federal statute.

[2] Plaintiff filed an amended complaint as of right after Defendant Landstar filed its motion to dismiss. *See* Dkt. No. 23; Fed. R. Civ. P. 15(a)(1)(B). Plaintiff's amended complaint contained the same three causes of action as its original complaint. *See* Dkt. No. 1. However, Plaintiff's amended complaint also included some changes that were relevant to Defendant Landstar's motion to dismiss; and, therefore, Defendant Landstar directed its reply to Plaintiff's opposition to its motion to Plaintiff's amended complaint.

## II. DISCUSSION

### A. Motion to dismiss standard

Defendant Landstar's motion to dismiss first relies on the doctrine of federal preemption. *See* Dkt. No. 17-1 at 8-14. "'[A] district court may grant a motion to dismiss based on federal preemption, if the defense can easily be determined from the pleadings.'" *Anderson Trucking Serv. v. Eagle Underwriting Grp., Inc.*, No. 3:17-cv-000817 (CSH), 2018 U.S. Dist. LEXIS 11841, *11 (D. Conn. Jan. 25, 2018) (quoting *Marentette v. Abbott Labs., Inc.*, 201 F. Supp. 3d 374, 377 (E.D.N.Y. 2016) (quotation marks and citations omitted)).

In the alternative, Defendant Landstar moves to dismiss for failure to state a claim. *See* Dkt. No. 17-1 at 15-17. "When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *LMC Indus. Contractors, Inc. v. Dominion Energy Transmission, Inc.,* No. 5:20-CV-677 (FJS/ATB), 2021 U.S. Dist. LEXIS 159441, *3 (N.D.N.Y. Aug. 24, 2021) (Scullin, S.J.) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted)). However, the court is not required to credit legal conclusions, bare assertions, or conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009) (citations omitted). As such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S.] at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [2007]).

### B. Whether the Carmack Amendment and Interstate Commerce Commission Termination Act of 1995 protect Defendant Landstar from liability for Plaintiff's damages under the doctrine of federal preemption

Defendant Landstar first argues that the Court should dismiss Plaintiff's complaint against it because the Carmack Amendment prevents carriers from being liable for state-law claims based on the doctrine of federal preemption. Defendant Landstar similarly contends that the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101 *et seq.* (the "ICCTA"), prevents brokers from being liable for these types of claims. The Court thus addresses the issues pertaining to preemption under the Carmack Amendment and the ICCTA in turn.

#### 1. Whether the Carmack Amendment applies and preempts Plaintiff's state law claims against Defendant Landstar

"'The Carmack Amendment addresses the subject of carrier liability for goods lost or damaged during shipment, and most importantly provides shippers with the statutory right to recover for the actual loss or injury to their property caused by any of the carriers involved in the shipment.'" *Shields v. United Van Lines*, Civ. No. 3:21CV01287(SALM), 2021 U.S. Dist. LEXIS 235638, *5 (D. Conn. Dec. 9, 2021) (quoting *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 377 (2d Cir. 1994) (emphases removed)). "In enacting the Amendment, 'Congress intended to provide interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability[]' by (1) 'establishing a single uniform regime for recovery,' and (2) 'preempting the shipper's state and common law claims against a carrier for loss or damage to goods during shipment.'" *Id.* at *5-*6 (quoting *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 73 n.6 (2d Cir. 2001) (citations and quotation marks omitted)). "Thus, '[t]he Carmack Amendment "preempts all state law [claims] on the issue of interstate carrier

liability.'"" *Id.* at *6 (quoting *Aviva Trucking Special Lines v. Ashe*, 400 F. Supp. 3d 76, 79 (S.D.N.Y. 2019)) (other citation omitted).

The Carmack Amendment further provides that "'a carrier is liable for damages incurred during a shipment of goods, whereas a broker – someone who merely arranges for transportation – is not liable.'" *Vanguard Graphics LLC v. Total Press Sales & Serv., LLC*, No. 3:18-CV-55 (NAM/ML), 2020 U.S. Dist. LEXIS 189054, *11 (N.D.N.Y. Oct. 13, 2020) (Mordue, S.J.) (quoting *Tryg Ins. v. C.H. Robinson, Worldwide, Inc.*, 767 F. App'x 284, 285 (3d Cir. 2019)). "Specifically, a 'carrier' is liable for 'the actual loss or injury to the property' for damage caused during the transportation." *Id.* (quoting 49 U.S.C. § 14706(a)(1)). "In deciding whether an entity acted as a carrier or a broker, courts 'look to how the party acted during the "specific transaction" at issue, which includes "the understanding among the parties involved [and] consideration of how the entity held itself out."'" *Id.* at *12 (quoting *Louis M. Marson Jr., Inc. v. Alliance Shippers, Inc.*, 438 F. Supp. 3d 326, 331 (E.D. Pa. 2020) (citations omitted)); *see JAS Forwarding (USA), Inc. v. Owens Truckmen, Inc.*, No. 17-cv-03589 (ADS)(AYS), 2017 U.S. Dist. LEXIS 182012, *14 (E.D.N.Y. Nov. 1, 2017) (noting, in the summary judgment context, that "'[t]he difference between a carrier and a broker is often blurry[,] and it is apparent from the case law that the carrier/broker inquiry is inherently fact-intensive . . . '" (quotations omitted)).

Congress defines a "broker" as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). A "carrier" constitutes "a motor carrier, a water carrier, and a freight forwarder." 49 U.S.C. § 13102(3). A

"motor carrier" is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14); *see also Fed. Ins. Co. v. SF Express Corp.*, No. 21-cv-5539 (JSR), 2021 U.S. Dist. LEXIS 190900, *4 (S.D.N.Y. Oct. 4, 2021) (ruling that, "'if a party accepted responsibility for ensuring delivery of the goods, regardless of who actually transported them, then the party qualifies as a carrier'" (quotation omitted)). "A freight forwarding company arranges for, coordinates, and facilitates cargo transport, but does not itself transport cargo." *Norfolk Southern Railway Co. v. James W. Kirby Pty LTD*, 543 U.S. 14, 19 (2004) (parentheses omitted). More specifically, Congress defines the following as a "freight forwarder":

> The term "freight forwarder" means a person holding itself out to the general public . . . to provide transportation of property for compensation and in the ordinary course of its business –
>
> (A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;
>
> (B) assumes responsibility for the transportation from the place of receipt to the place of destination; and
>
> (C) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle.

49 U.S.C. § 13102(8)(A)-(C) (internal citation omitted).

"In considering what services were offered, courts closely examine whether a company's statements to a shipper indicated that its 'actions were not limited to arranging transport, but also exerting some measure of control over . . . drivers.'" *Nipponkoa Ins. Co. v. C.H. Robinson Worldwide, Inc.*, No. 09 Civ. 2365 (PGG), 2011 U.S. Dist. LEXIS 17752, *13 (S.D.N.Y. Feb. 18, 2011) (quoting *Hewlett-Packard Co. v. Brother's Trucking Enters., Inc.*, 373 F. Supp. 2d 1349, 1352 (S.D. Fla. 2005) (parenthetical omitted)).

In Plaintiff's original complaint, it identified Defendant Landstar as "a broker or 'freight forwarder' that arranges for items to be shipped in the United States and Canada." *See* Dkt. No.

1 at ¶ 10. However, Plaintiff altered this language in its amended complaint, which supersedes the original complaint, alleging that Defendant Landstar "is a provider of transportation services, including shipment of items from the United States to Canada" and that it is "registered with the United State[s] Department of Transportation as an authorized carrier." *See* Dkt. No. 23 at ¶¶ 10-11. Plaintiff further alleged that Defendant Landstar "selected . . . and engaged" Defendant Rose's – as a freight carrier – to ship the custom chassis to Canada. *See* Dkt. No. 23 at ¶ 13. Plaintiff also attached the bill of lading, dated March 12, 2018, to its amended complaint, which allegedly depicted that Plaintiff retained Defendant Landstar as a "carrier" to deliver the custom chassis. *See id.* at ¶ 12; Dkt. No. 23-1 at 2.

In its amended complaint, Plaintiff incorporates the factual allegations described above and alleges that Defendant Landstar failed to fully perform under its contract with Plaintiff and that Defendant Landstar "negligently selected [Defendant] Rose's and negligently entrusted the [c]ustom [c]hassis delivery to [Defendant] Rose's[.]" *See* Dkt. No. 23 at ¶¶ 26-28, 34. Plaintiff further alleges that Defendant Landstar is liable for negligence as a "carrier[] under the Carmack Amendment." *See id.* at ¶ 40. Accepting Plaintiff's allegations as true and rejecting conclusory assertions as the Court must, the Court finds that Plaintiff has plausibly alleged that Defendant Landstar is a carrier. Plaintiff's strongest evidence to support its claim in its amended complaint that Defendant Landstar is a carrier is the bill of lading. In that bill of lading, Defendant Landstar's name is listed directly under a box titled "CARRIER," and a representative for Defendant Landstar executed the bill of lading by signing as the "carrier." *See* Dkt. No. 23-1 at 2. The bill of lading shows that the carrier, Defendant Landstar, received the chassis on March 12, 2018, and those chassis were to be shipped and delivered to Quebec, Canada. *See id.* It does not list any other carriers or transporters, or anyone else who would be

responsible for the chassis.  *See id.*  The Court therefore finds that, at this stage of the litigation, Plaintiff has plausibly alleged that Defendant Landstar took responsibility for the transportation of the chassis, *see Fed. Ins. Co.*, 2021 U.S. Dist. LEXIS 190900, at *4-*5, and, thus, has sufficiently alleged that Defendant Landstar meets the second criterion of the definition of a freight forwarder*, see* 49 U.S.C. § 13102(8)(B).

Additionally, the Court finds that "it is possible that in the course of [Defendant Landstar's] business it 'provides for assembling and consolidating' and 'provides for break-bulk and distribution operations' of shipments" to satisfy the first criterion of the definition of a freight forwarder.  *Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*, No. 11 Civ. 3238 (ALC) (GWG), 2014 U.S. Dist. LEXIS 33807, *11 (S.D.N.Y. Mar. 13, 2014) (quotation and other citation omitted); *see* 49 U.S.C. § 13102(8)(A).  Plaintiff's allegation that Defendant Landstar selected and engaged freight carriers, such as Defendant Rose's, to transport products supports this finding.  *See* Dkt. No. 23 at ¶ 13.

It is also undisputed that Defendant Landstar used Defendant Rose's, a carrier, for part or all of the transportation of Plaintiff's chassis to Canada.  For these reasons, the Court finds that Plaintiff has plausibly asserted that Defendant Landstar was a freight forwarder, which is a subcategory of "carriers" that may be responsible for damages during shipping pursuant to the Carmack Amendment.  *See* 49 U.S.C. § 13102(8)(A)-(C).  Therefore, at this juncture, the Court finds that Defendant Landstar is a "carrier" and is subject to the Carmack Amendment.  As such, the Court denies Defendant Landstar's motion to dismiss the second cause of action pursuant to that Amendment.[3]

---

[3] The Court notes that Defendant Landstar is not precluded from raising this issue again in the future, such as in a motion for summary judgment, if evidence is produced during discovery that

The Court further recognizes that discovery has not yet been conducted in this matter, and the evidence may ultimately show that Defendant Landstar was, in fact, a broker, thus making the Carmack Amendment inapplicable. The Court therefore finds that it is inappropriate to dismiss Plaintiff's state-law claims against Defendant Landstar as preempted by that Amendment at this time. The Court notes that this issue would be more appropriately addressed at summary judgment. Accordingly, the Court next considers whether the ICCTA preempts Plaintiff's state-law claims against Defendant Landstar if Defendant Landstar is a broker.

### 2. *Whether the ICCTA preempts Plaintiff's state-law claims against Defendant Landstar*

Defendant Landstar contends that the ICCTA preempts Plaintiff's state-law claims against it. The ICCTA provides that "no State . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker." 49 U.S.C. § 14501(b)(1). The ICCTA further provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). [4] The Second Circuit has

---

supports Defendant Landstar's arguments that it is neither a motor carrier nor a freight forwarder.

[4] Although neither party addresses the issue, the ICCTA, on its face, does not appear to apply in this case. The plain language of the ICCTA preempts laws relating to "intrastate" rates, routes, and services. There is no dispute that the chassis were shipped in *interstate* commerce from South Carolina to Canada. Nonetheless, since the parties zealously dispute the ICCTA's application, the Court addresses whether it preempts Plaintiff's state law claims against Defendant Landstar. *See Covenant Imaging, LLC v. Viking Rigging & Logistics, LLC*, No.

not yet ruled on whether these provisions preempt state-law negligence claims against brokers. *See Covenant Imaging, LLC v. Viking Rigging & Logistics, LLC*, No. 3:20-CV-00593 (KAD), 2021 U.S. Dist. LEXIS 49000, *15 (D. Conn. Mar. 16, 2021).

In *Covenant Imaging*, the plaintiff alleged causes of action under the Carmack Amendment and for negligence against a defendant, Viking, that contracted to transport an MRI machine. *See id.* at *3. Viking then arranged for Pioneer to transport the machine, and Pioneer informed Viking that it would sub-broker the shipment to another party called Eagle. *See id.* at *3-*4. Pioneer moved to dismiss the complaint against it for substantially the same reasons as Defendant Landstar in this case. *See id.* at *8. Initially, the court denied Pioneer's motion to dismiss under the Carmack Amendment, finding that it acted as a "carrier" and was subject to liability. *See id.* at *12-*13. However, the court did not dismiss the plaintiff's state-law claims against Pioneer, allowing it to plead in the alternative and leaving open the possibility that Pioneer was a broker. *See id.* The court therefore turned to the ICCTA, noting that plaintiff brought its negligence claim "against Pioneer for, *inter alia,* its alleged negligence in selecting Eagle as a third-party carrier." *Id.* at *19. In deciding the motion, the court considered the plain language of the ICCTA, courts' general disfavor for preemption, Congress's intent, the role of the states' police powers, and the relevant caselaw, and it concluded that the ICCTA "allows shippers to bring common law negligence claims against brokers that breach a general duty of care not otherwise related to prices, routes, or services." *Id.* at *21 (footnote omitted). The court further "agree[d] with other courts that have held that such negligence claims, which

---

3:20-CV-00593 (KAD), 2021 U.S. Dist. LEXIS 49000, *15 n.2 (D. Conn. Mar. 16, 2021); *OurBus, Inc. v. City of Ithaca*, No. 3:19-CV-0356 (DEP), 2019 U.S. Dist. LEXIS 108614, *44 n.19 (N.D.N.Y. June 28, 2019) (Peebles, M.J.); *Factory Mut. Ins. Co. v. One Source Logistics, LLC*, No. LA CV16-06385 JAK (JPRx), 2017 U.S. Dist. LEXIS 215317, *12-*13 (C.D. Cal. May 5, 2017).

operate to impose a general duty of care on market participants across industries, are sufficiently attenuated from the regulation of prices, routes, or services in the transportation industry to avoid preemption." *Id.* at \*19. Accordingly, the court found that the ICCTA did not preempt the plaintiff's negligence claim. *See id.*

The Court adopts the District of Connecticut court's reasoning from *Covenant Imaging* to find that Plaintiff has plausibly alleged Defendant Landstar's negligence in selecting Defendant Rose's as a carrier to transport the custom chassis and that such decision was sufficiently attenuated from its other decisions related to price, route, or service of motor carriers to preclude preemption. *See generally id.* at \*15-\*21; *see also Factory Mut. Ins. Co. v. One Source Logistics, LLC*, No. LA CV16-06385 JAK (JPRx), 2017 U.S. Dist. LEXIS 215317, \*19 (C.D. Cal. May 5, 2017); *Complete Coach Works v. Landstar Ranger, Inc.,* No. CV 10-1383 DSF (OPx), 2011 U.S. Dist. LEXIS 156417, \*4 (C.D. Cal. Apr. 13, 2011).[5] As discussed below, the Court makes the same recommendation with respect to Plaintiff's state-law breach of contract claim against Defendant Landstar. As such, the Court rejects Defendant Landstar's contention that the ICCTA preempts Plaintiff's state-law claims.

---

[5] Notably, the Court finds *Works* sufficiently analogous for the reasons the court in *Covenant Imaging* relied on it, but the Court does not accept Plaintiff's contention that *Works* is binding on this case or this issue on the basis of collateral estoppel. As Defendant Landstar points out, *Works* is more than ten years old, Plaintiff was not a party to that case, and the factual circumstances are not the same; and, therefore, collateral estoppel does not apply. *See generally Jeanty v. City of Utica*, No. 6:16-cv-00966 (BKS/TWD), 2021 U.S. Dist. LEXIS 116595, \*6 (N.D.N.Y. Apr. 15, 2021) (Sannes, J.).

**C. Whether the ICCTA preempts Plaintiff's breach of contract claim against Defendant Landstar, and, if not, whether Plaintiff plausibly stated a claim for breach of contract**

Initially, as it argued above with respect to Plaintiff's negligence claim, Defendant Landstar contends that the ICCTA prevents it from being liable for common law breach of contract under the doctrine of federal preemption. *See* Dkt. No. 17-1 at 15-17. Nonetheless, for the same reasons articulated above, the Court echoes the findings in *Covenant Imaging* and concludes that Plaintiff's breach of contract claim against Defendant Landstar is based on facts that are sufficiently attenuated from Defendant Landstar's decisions about price, route, or service, so as to make preemption inapplicable. *See Covenant Imaging*, 2021 U.S. Dist. LEXIS 49000, at \*15-\*21. As such, the Court must determine whether Plaintiff has plausibly stated a claim for breach of contract against Defendant Landstar.

"To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)). In Plaintiff's first cause of action, it incorporates all prior allegations and further alleges that it "entered into contracts with [Defendant] Landstar . . . for the shipment of the [c]ustom [c]hassis." *See* Dkt. No. 23 at ¶ 26. Plaintiff attaches its bill of lading with Defendant Landstar to support its claim. *See* Dkt. No. 23-1 at 2. Plaintiff asserts that it "fully performed all obligations under such contracts" but that Defendant Landstar "failed to fully perform under the contracts" in that it "failed to ship the [c]ustom [c]hassis to Canada, instead allowing the shipment to be damaged in New York due to casualty." *See* Dkt. No. 23 at ¶¶ 27-28. Specifically, Plaintiff claims that Defendant Landstar selected and engaged Defendant

Rose's to transport the chassis, and the chassis were damaged when Defendant Gillis – Defendant Rose's employee – crashed in New York. *See id.* at ¶¶ 13-16. Plaintiff explains that it incurred $153,687.50 in damages to replace the custom chassis as a result of the breach. *See id.* at ¶¶ 22, 29. Based on these allegations, the Court finds that Plaintiff has plausibly alleged each element of its breach of contract claim against Defendant Landstar. Therefore, the Court denies Defendant Landstar's motion to dismiss on this basis.

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Landstar's motion to dismiss Plaintiff's amended complaint, *see* Dkt. No. 17, is **DENIED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Hummel for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: January 27, 2022
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge